IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SCHENDER, | ) | Case No. 1:19-cv-00565 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

I.      **Introduction**

Plaintiff, James Schender, seeks judicial review of the final decision of the Commissioner of Social Security, denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.[1]  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Schender's applications for DIB and SSI be AFFIRMED.

II.      **Procedural History**

Schender applied for DIB on August 27, 2016, and SSI on December 22, 2016.  (Tr. 11, 227-28).  Schender alleged that he became disabled on November 1, 2012, due to "bi-polar

---

[1] Schender's SSI application is not in the administrative transcript, but is referenced in the notice of ALJ hearing (Tr. 190), the hearing transcript (Tr. 33), and the ALJ's decision (Tr. 11).  *See* ECF Doc. 9 (administrative transcript).

[disorder], depression, anxiety disorder, ADD, panic attacks, agoraphobi[a], asthma, memory [loss], suicidal [ideation], and forgetfulness." (Tr. 127, 227). The Social Security Administration denied Schender's applications initially and upon reconsideration. (Tr. 11, 127-53). Schender requested an administrative hearing. (Tr. 165-66). ALJ Susan Guiffre heard Schender's case on March 21, 2018, and denied the claim in a July 17, 2018, decision. (Tr. 8-58). On February 13, 2019, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). On March 14, 2019, Schender filed a complaint to seek judicial review of the Commissioner's decision. ECF Doc. 1.

## III.  Evidence

### A.  Personal, Educational and Vocational Evidence

Schender was born on December 14, 1967; he was 44 years old on the alleged disability onset date; and he was 50 years old on the date the ALJ issued his decision. (Tr. 23). Schender had a high school education. (Tr. 23). Schender had past work as a customer order clerk and sales person, but the ALJ found that he was not able to perform any of his past work and none of his skills transferred. (Tr. 22-23).

### B.  Relevant Medical Evidence

#### 1.  Mental Health Treatment Records

On October 12, 2012, Dr. Phillip Fischer noted that Schender was diagnosed with major depressive disorder, ADHD, and cluster B traits; however, Schender had 'good general health" and was compliant with his treatments. (Tr. 470). Dr. Fischer gave Schender a GAF score of 65 and prescribed Schender Lamictal, Klonopin, Seroquel, and Adderall. (Tr. 470). At a follow-up on November 16, 2012, Schender said he was stressed because he lost his job, a tree fell on his

car, and he didn't like change.  (Tr. 469).  Schender's GAF score and treatment remained the same.  (Tr. 469).

On December 19, 2012, Schender went to the ER after he took a bottle of Klonopin and cut his wrist with a letter opener.  (Tr. 365).  Vijay Rastogi, MD, noted that Schender had a history of depression and previous suicide attempt and gave him a GAF score of 30.  (Tr. 367).  Notwithstanding his suicide attempt, Dr. Rastogi and Brian Marshall, DO, noted that Schender was oriented and cooperative, had no confusion, and had normal thought content and behavior.  (Tr. 367, 368-69, 404-05).  Dr. Rastogi cleared Schender for psychiatric admission.  (Tr. 366, 374).

Schender was admitted into the psychiatric department on December 20, 2012.  (Tr. 346).  During his admission intake, Schender told Mark Porrello, RN, that he made his suicide attempt because he could not sleep due to stress related to his friend's death, his unemployment, and his dog's poor health.  (Tr. 346).  Schender also admitted to a history of substance abuse, including methamphetamine, THC, ecstasy, special K, GHP, and cocaine.  (Tr. 346, 348).  Porrello gave Schender a GAF score of 20.  (Tr. 347).  On December 22, 2012, Schender told Elizabeth Spadafore-Devlin, LISW-S, that he had trouble understanding and recalling information due to his previous drug usage.  (Tr. 353).  Schender also rated his depression and anxiety as a 4 or 5 out of 10, and said that his main issue was sleeping trouble.  (Tr. 356).  Joseph Baskin, MD, diagnosed Schender with severe major depressive disorder and amphetamine use disorder, and gave Schender a GAF score of 31 to 40.  (Tr. 355).  Dr. Baskin noted that, notwithstanding his suicide attempt and diagnoses, Schender displayed coherent thought process/content, average intelligence, and intact memory/cognition.  (Tr. 356).  On December 23, 2014, Pamela Kerr, RN, rated Schender's depression and anxiety as a 3 out of 10 and noted that his concentration was

"much better."  (Tr. 357).  Schender was discharged on December 24, 2012.  (Tr. 362-64).  At

that time, he rated his depression and "mild" anxiety as a 0 out of 10, and Dr. Baskin gave him a

GAF score of 51-60, indicating "moderate symptoms or moderate difficulty in social,

occupational, or school functioning."  (Tr. 357, 364).  Dr. Baskin also recommended that

Schender continue taking Lamictal and Seroquel, but switch from Adderall to Ativan.  (Tr. 358).

On January 11, 2013, Schender told Dr. Fischer that he had overdosed on Seroquel and

Klonopin; he was stressed that his employer went out of business; and he was "very

hypersensitive" to change.  (Tr. 468).  On examination, Schender was alert, oriented, and

cooperative; and he had fair eye contact, normal speech, average intelligence, full memory, and

coherent/goal directed thought processes.  (Tr. 468).  He was also anxious, depressed, and

distracted.  (Tr. 468).  Dr. Fischer gave Schender a GAF score of 52, continued his medications,

and recommended continued psychotherapy.  (Tr. 468).  At a follow-up on February 20, 2013,

Dr. Fischer noted that Schender had "very low energy" and was irritable, but his range of

symptoms remained generally the same.  (Tr. 467).  Schender's GAF score was 57.  (Tr. 467).

On April 17, 2013, Schender had a dysthymic mood, but he had good energy, was compliant

with his treatment, and increased his GAF score to 61.  (Tr. 467).  From May 29, 2013, through

October 12, 2013, Schender's symptoms remained generally unchanged, except that his GAF

score increased to 65 and Dr. Fischer rated his anxiety and depression as "mild."  (Tr. 462-65).

From November 8, 2013, through June 20, 2014, Schender's range of symptoms remained

generally unchanged, but his GAF decreased to 62.  (Tr. 457-61).  Throughout Schender's

treatment, he said that his stressors included unemployment, issues with his parents and sister,

and his dog's death.  (Tr. 457-68).

From September 18, 2014, through January 23, 2018, Schender saw Dr. Fischer for 34 additional treatment sessions.  (Tr. 471-500, 526-81, 585-654, 658-85, 689-716, 721-74, 799-827).  During that time, Dr. Fischer regularly noted that Schender was calm, cooperative, attentive, and oriented; had normal speech, appropriate affect, depressive thoughts and mood, anxiety, a "fair" short-term memory, a "good" long-term memory, a normal fund of knowledge, and fair insight/judgment; and was diagnosed with moderate major depressive affective disorder, attention deficit disorder without hyperactivity, and adjustment disorder with mixed anxiety and depressive mood.  (*Id.*).  Schender regularly complained about stress and sleeping problems due to issues with his father, sister, and partner.  (*Id.*).  And Dr. Fischer regularly prescribed medications, including Lamictal, Seroquel, Adderall, Ativan, Clonazepam, and Klonopin at varying dosages.  (*Id.*).  Dr. Fischer also recommended that Schender maintain a healthy diet, exercise, and continue receiving psychoeducation and therapy.  (*Id.*).  Dr. Fischer did not provide any GAF scores after September 18, 2014.  (*Id.*).

On April 8, 2015, and March 24, 2017, Schender told Dr. Fischer that he used marijuana to help him sleep.  (Tr. 481, 571, 599-600, 674, 756-57).  On March 31, 2016, Schender told Dr. Fischer that he feared medication changes, and on May 24, 2016, he said that he'd had bad side effects from Celexa, including twitches, fever, and temperature regulation issues.  (Tr. 537, 541, 693, 698).  Schender often reported that he would lay in bed for an entire day, or several days at a time, especially when did not take his Adderall.  (Tr. 541, 621-22, 698).  On December 21, 2016, Dr. Fischer added agoraphobia with panic disorder to Schender's list of diagnoses. (Tr. 624).  Nevertheless, Dr. Fischer told Schender that getting out of the house would help him improve.  (Tr. 628).  On January 16, 2017, and February 13, 2017, Schender told Dr. Fischer that he was feeling better and discussed leaving his house alone, going to a coffee shop to read, and

going to a restaurant with his partner.  (Tr. 607, 612, 764, 769).  Schender also said that he was

working on reducing his medication, per Dr. Fischer's recommendation.  (Tr. 607, 613, 764,

770).  On May 23, 2017, and August 31, 2017, Schender said that he had additional stress

because he was worried about a new roommate's contribution to the home and whether he would

bring drugs into the home.  (Tr. 585-86, 729-31, 742-43).  And on October 19, 2017, and January

23, 2018, Schender said that he was stressed due to a collections case for back-taxes and his

partner using crystal meth.  (Tr. 721, 799, 821).  Notwithstanding his problems and stressors,

Schender told Dr. Fischer that he was "doing ok" and that he was "ok" on his medications on

June 29, 2017, and December 21, 2017.  (Tr. 736-37, 806).  On January 23, 2018, Dr. Fischer

stated that Schender was socially withdrawn and essentially housebound; however, he managed

his daily living activities.  (Tr. 800).  Dr. Fischer also stated that, although Schender reported

deteriorating memory, "past neuropsychological testing was equivocal about that."  (Tr. 800).

### 2.    Other Relevant Medical Records

Records from Schender's other physical care treatment providers also occasionally

touched on his mental health symptoms.  On October 15, 2013, Schender told Keyvan Ravakhah,

MD, that he was concerned about his short-term memory, but that his long-term memory was

good.  (Tr. 517, 519).  Dr. Ravakhah noted that Schender's memory problems appeared "very

subjective," and that he was able to recall most questions properly.  (Tr. 521).  Dr. Ravakhah also

estimated that Schender's memory issues could be a "drug effect."  (Tr. 521).  At a follow-up on

April 15, 2016, Schender continued to report deteriorating memory, but said that his depression

had improved.  (Tr. 515).  On July 15, 2016, Schender told Dr. Ravakhah that he used drugs, and

he denied any fatigue, sleep issues, anxiety, suicidal thoughts, mental problems, and depression.

(Tr. 503-05).  Further, on September 23 and October 14, 2014, and May 14, 2015, Maria de

6

Fatima Pozuelo, M.D., and Katherine Turner, PA-C, found that Schender was oriented, well-developed, and had normal mood, memory, affect, and judgment. (Tr. 315, 318, 321). And on September 23, 2014, Huy Tran, PA-C, and Kyle Le, PA-C, found that Schender was negative for sleep disturbance, mood disorder, and psychological stressors. (Tr. 324, 327).

### C.     Relevant Opinion Evidence

#### 1.     Treating Psychiatrist—Phillip Fischer, MD

On June 30, 2017, Dr. Fischer wrote a letter to the Ohio Department of Job and Family Services, stating that "Mr. Schender is being treated for several medical conditions. As such, he is unable to engage in gainful employment for the foreseeable future." (Tr. 717).

On December 1, 2017, Dr. Fischer completed a medical source statement evaluating Schender's mental capacity. (Tr. 793-94). Dr. Fischer opined that Schender had mild limitations in working close to or with others without interrupting or distracting them. (Tr. 794). Schender had moderate limitations in: (1) following one or two step instructions to carry out a task; (2) describing work activity to someone else; (3) asking and answering questions and providing explanations; (4) recognizing a mistake and correcting it; (5) identifying and solving problems; (6) initiating or sustaining conversation; (7) understanding and responding to social cues; (8) initiating and performing a task that he understood and knew how to do; (9) changing activities or work settings without being disruptive; (19) maintaining personal hygiene and attire appropriate to a work setting; and (11) being aware of normal hazards and taking appropriate precautions. (Tr. 793-94). Dr. Fischer said that Schender had marked limitations in: (1) understanding and learning terms, instructions, or procedures; (2) sequencing multi-step activities; (3) using reason and judgment to make work-related decisions; (4) cooperating with others; (5) stating his own point of view; (6) responding to requests, suggestions, criticism,

correction, and challenges; (7) keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; (8) working at an appropriate and consistent pace; (9) responding to demands; (10) adapting to changes; (11) managing his psychologically based symptoms; and (12) distinguishing between acceptable and unacceptable work performance.  (Tr. 793-94).  Finally, Dr. Fischer said that Schender had extreme limitations in: (1) handling conflicts with others; (2) completing tasks in a timely manner; (3) ignoring or avoiding distractions while working; (4) sustaining an ordinary routine and regular attendance at work; (5) working a full day without needing more than the allotted number or length of rest periods during the day; (6) setting realistic goals; and (7) making plans for himself independent of others.  (Tr. 793-94).

### 2. State Agency Consultants

On November 2, 2016, state agency psychological consultant Kathleen Malloy, Ph.D., evaluated Schender's mental capacity based on a review of the medical record.  (Tr. 131-36). Dr. Malloy found that Schender had mild restrictions in his daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace.  (Tr. 132).  Dr. Malloy determined that Schender had medically determinable impairments, including affective disorders and anxiety disorders; however, the severity of his symptoms – including malaise, weakness, fatigue, and social interaction limitations – did not meet or medically equal the criteria in the listing of impairments. (Tr. 131-33).  Dr. Malloy opined that Schender had no understanding or memory limitations, and he was not significantly limited in his ability to: (1) carry out very short and simple instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; (4) work in

coordination with or in proximity to others without being distracted by them; (5) make simple work-related decisions; (6) interact appropriately with the general public; (7) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior; (11) adhere to basic standards of neatness and cleanliness; (12) be aware of normal hazards and take appropriate precautions; (13) travel in unfamiliar places or use public transportation; and (14) set realistic goals or make plans independently of others.  (Tr. 135-36).  She also said that Schender was moderately limited in his ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; (4) perform at a constant pace without an unreasonable number and length of rest periods; and (5) respond appropriately to changes in the work setting. (Tr. 135-36).

On December 1, 2016, Kristen Haskin, Psy.D., reviewed Schender's medical records and generally concurred with Dr. Malloy's opinion. (Tr. 144-46, 148-50).  Dr. Haskin additionally reviewed whether Schender met the listing for organic mental disorders and found that he did not.  (Tr. 145-46).  Dr. Haskin also determined that Schender did have understanding and memory limitations; however, he: (1) did not have any evidence of limitation in remembering locations, remembering work-like procedures, or understanding and remembering very short and simple instructions; and (2) he was not significantly limited in understanding and remembering detailed instructions.  (Tr. 148).  Dr. Haskins also reduced from "moderately limited" to "not significantly limited" Schender's ability to carry out detailed instructions.  (Tr. 149).

9

### D.      Relevant Testimonial Evidence

Schender testified at the ALJ hearing.  (Tr. 35-50).  Schender said that he lived with his partner, who did most of the housekeeping chores and walked their dog.  (Tr. 40, 43).  Schender said that he had panic attacks and a lack of motivation that prevented him from focusing on cleaning; however, he tried to clean the floor and do laundry sometimes.  (Tr. 40).  He did not cook, and he did not grocery shop because he did not like to leave his house.  (Tr. 41).  Schender 'reluctantly" drove, but only to his psychiatry appointments.  (Tr. 41).  Schender testified that he stopped contact with all his family and friends, except his sister and a high school friend that he talked to sometimes.  (Tr. 41-42).  He was friendly with his neighbors but did not do anything with them.  (Tr. 42).  Schender spent most of his days at home, where he looked out the window, played games online, watched YouTube, watched movies, and fed his dog.  (Tr. 42-43).

Schender testified that he last worked in 2012 as a customer service representative for Discounted Telecommunications.  (Tr. 35-36).  At his job, Schender answered phone calls and referred callers to other people based on what the caller wanted.  (Tr. 36).  Before that job, Schender worked as a sales clerk, buyer, and stocker in a gift shop.  (Tr. 38).  Schender said that he stopped working because he "didn't want to get out of bed."  (Tr. 45).  He said that he often waited until 3 PM or 4 PM to get out of bed, unless he had an appointment.  (Tr. 46).  Schender said that he did not shower on the days he stayed in bed, and that he did not like to shower.  (Tr. 46).

Schender testified that "anything c[ould] trigger a panic attack," including seeing a car pass by outside his window.  (Tr. 47).  Schender said that he had seen Dr. Fischer for 10 years, and that he took medications for his anxiety and depression.  (Tr. 48).  He said that his medications helped 'a little bit," and that he would notice if he did not take them.  (Tr. 48).

10

Schender said that the only medication that "actually really help[ed]" was Klonopin, which he took as needed.  (Tr. 49).  His medication caused him to tremble and affected his balance and coordination.  (Tr. 49).

Brett Salkin, a vocational expert ("VE"), also testified at the ALJ hearing.  (Tr. 50-55).  Because Schender raises no issue in this administrative appeal concerning the ALJ's reliance upon the VE's opinions, it is unnecessary to provide a detailed summary of the VE's testimony.  Suffice it to say, the VE opined that a hypothetical person with Schender's age, experience, and education would be able to do a substantial number of jobs that were available in the national economy.  (Tr. 52).  On the other hand, if a person were as limited as Dr. Fischer had opined, the VE acknowledged that work would be precluded.  (Tr. 53).

## IV.    The ALJ's Decision

The ALJ's July 17, 2018, decision found that Schender was not disabled and denied his applications for DIB and SSI.  (Tr. 11-25).  The ALJ found that Schender had the severe impairments of: "asthma, affective disorders, anxiety disorders, ADHD (attention deficit hyperactivity disorder), and acrophobia with panic disorder."  (Tr. 14).  The ALJ determined that Schender had no impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-16).  The ALJ determined that Schender had the RFC to perform a full range of work at all exertional levels, except that:

> The claimant must avoid concentrated exposure to extreme cold and heat.  He must avoid exposure to wetness and humidity.  The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  He can carry out tasks [w]here duties are relatively static and changes can be explained.  The claimant can perform short cycle tasks in a setting without fast pace demands.  He can handle the stresses of routine work that does not involve timed tasks or rate quotas.

(Tr. 16).

In assessing Schender's RFC, the ALJ explicitly stated that she "considered all symptoms" in light of the "objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSR 16-3p." (Tr. 16). The ALJ provided an exhaustive review of Schender's mental health treatment history, which she found "usually show[ed] only mild or moderate abnormalities with many normal findings." (Tr. 17-20). In discussing the treatment notes from each of each of Schender's appointments with Dr. Fischer from October 2012 through January 2017, the ALJ discussed both: (1) Dr. Fischer's findings on objective examination, and whether Dr. Fischer's findings had changed following earlier examinations; and (2) any GAF scores, when they were given. (Tr. 18-20). The ALJ also noted that Schender had one episode of decompensation (a suicide attempt), after which he quickly recovered with in-hospital treatment and after which subsequent examinations showed only mild to moderate symptoms. (Tr. 18). The ALJ stated that, although the treatment records showed mostly normal findings – supporting Schender's ability to sustain work – she included in the RFC finding several limitations to specifically accommodate Schender's anxiety, depression, fair memory, fair insight, and fair judgment. (Tr. 17, 20).

The ALJ said that she gave Dr. Fischer's December 2017 opinion "partial weight." (Tr. 21). The ALJ noted that Dr. Fischer was a "longtime treating psychiatrist and the types . . . of limitations assessed in his medical source statement [were], for the most part, consistent with his . . . examination findings." (Tr. 21). Nevertheless, the ALJ found that "Dr. Fischer's treatment records [did] not support the severity of limitations assessed in [his] medical source statement because . . . his treatment records show mostly normal findings with only mild and moderate abnormalities. . . . These examinations do not support marked and extreme limitations." (Tr. 21).

Further, the ALJ sated that Dr. Fischer's June 2017 letter was due "very little weight" because it was "merely a conclusory statement of disability," on an issue reserved to the Commissioner. (Tr. 21).  The ALJ also stated that she gave "great weight" to Dr. Malloy's and Dr. Haskins' opinions because they were "consistent with the medical evidence of record," including "psychiatric and mental status examinations show[ing] mostly normal findings with mild and moderate abnormalities."  (Tr. 22).

Because the ALJ found that Schender could not perform all or substantially all of the requirements of work at any exertional level, the ALJ relied on the VE's testimony to determine whether Schender could perform a significant number of jobs with his environmental and mental limitations.  (Tr. 23-24).  Based on the VE's testimony and considering Schender's age, RFC, education, and experience, the ALJ found that Schender was "able to perform the requirements of representative occupations" such as janitor, dishwasher, and landscape laborer.  (Tr. 24).  In light of her findings, the ALJ determined that Schender was not disabled from November 1, 2012, through the date of her decision and denied Schender's applications for DIB and SSI.  (Tr. 24-25.

## V.    Law & Analysis

### A.    Standard of Review

The court's review is limited to determining: (1) whether substantial evidence supported the Commissioner's final decision; and (2) whether the decision was made pursuant to proper legal standards.  42 U.S.C. § 405(g); 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  If the court answers "yes" to both questions, it must affirm the Commissioner's decision – even if the court might have decided the claim differently on its own. *Cf. Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("[A] decision supported

by substantial evidence must stand, . . . It is not our role to try the case *de novo*." (quotation omitted)).

"Substantial evidence" is *any evidence* that a reasonable person could believe is enough to back up the decision. *See Biestek*, 880 F.3d at 783 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Rogers*, 486 F.3d at 241. It does not require that *most* of the evidence in the record support the decision. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("Substantial evidence is more than a scintilla of evidence but less than a preponderance."). It also does not require the court to agree that the evidence relied upon was the most important or credible evidence in the record. *Biestek*, 880 F.3d at 783 (noting that the court does not "resolve conflicts in evidence nor decide questions of credibility" (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997))). If the Commissioner's factual conclusions were reasonably drawn from the record, they are within the Commissioner's "zone of choice" and cannot be second-guessed by the court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D.

14

Ohio 2011) (quoting Sarchet v. Charter, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.    Medical Opinions

Schender argues that the ALJ erred in giving only "partial weight" to Dr. Fischer's treating psychiatrist opinion and "great weight" to the state agency psychological consultants'

opinions. ECF Doc. 11 at 10-15.  Schender asserts that the ALJ's reasons for giving Dr.

Fischer's opinion less-than-controlling weight – that the extreme limitations in his opinion were

inconsistent with his own treatment records, showing mostly normal findings with mild to

moderate abnormalities – was not a good reason for rejecting a treating psychologist's opinion.

ECF Doc. 11 at 10-11.  Schender also contends that the ALJ did not sufficiently explain his

decision to discount Dr. Fischer's opinion, because she did not expressly discuss evidence that

was inconsistent with the ALJ's conclusion or that supported Dr. Fischer's opinions.  ECF Doc.

11 at 11-13.  Further, Schender argues that the ALJ erred in giving the state agency

psychological consultants' opinions greater weight than Dr. Fischer's opinion because: (1) Dr.

Fischer had an extensive treating relationship with Schender; (2) Dr. Fischer's opinion was

supported and corroborated by other evidence in the record; and (3) the state agency consultants

did not consider any evidence from after his date last insured.  ECF Doc. 11 at 13-15.

 The Commissioner responds that the ALJ applied proper legal standards and reached a

conclusion supported by substantial evidence in weighing the opinions of Dr. Fischer and the

state agency consultants.  ECF Doc. 13 at 8-18.  The Commissioner argues that the ALJ

adequately explained that she gave Dr. Fischer's opinion partial weight because, although the

types of issues Dr. Fischer identified were consistent with other evidence, Dr. Fischer's opinion

regarding the severity of Schender's symptoms was not.  ECF Doc. 13 at 8-9, 14-15.  Further, the

Commissioner asserts that the ALJ's opinion, read as a whole, makes clear that the ALJ

evaluated the entire record, did not ignore or overlook any evidence, considered all of the

regulatory factors, and reached a decision supported by substantial evidence.  ECF Doc. 13 at 10-

15.  The Commissioner contends that the ALJ was not required to discuss each finding in the

medical record or each of the regulatory factors concerning the handling of treating source

16

opinions, but in any event provided good reasons for giving Dr. Fischer's opinion partial weight based on a well-reasoned analysis of the record.  ECF Doc. 13 at 10-11, 14.  Finally, the Commissioner argues that the ALJ properly gave the state agency consultants' opinions great weight after considering the medical evidence that the state agency consultants were not able to consider.  ECF Doc. 13 at 15-17.

At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must give "controlling weight" to a treating source opinion if the opinion: (1) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) it is consistent with the other evidence in the record.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  If the ALJ gives less weight to a treating source's opinion, the ALJ must articulate good reasons for doing so.  *Id.*  Such reasons could include that: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records,"  *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation omitted).  Inconsistency with nontreating or nonexamining physicians' opinions alone is not a good reason for rejecting a treating physician's opinion.  *See Gayheart*, 710 F.3d at 377.

The ALJ must also determine what weight – other than controlling – should be given to the treating source's opinion, after considering the length of the length and frequency of treatment, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist.  *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Although the regulations do not require the

ALJ to provide a factor-by-factor analysis, the ALJ's explanation must be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  *Gayheart*, 710 F.3d at 376; *see also Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight he actually assigned.").  When the ALJ fails to adequately explain the weight given to a treating physician's opinion, or otherwise fails to provide good reasons for rejecting a treating physician's opinion, remand is appropriate.  *Cole*, 661 F.3d at 939.

"[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'"  *Gayheart*, 710 F.3d at 376.  Instead, an ALJ must weigh such opinions based on: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the physician's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion.  *Id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c).  Generally, an examining physician's opinion is due more weight than a nonexamining physician's opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 375.  An ALJ may rely on a state agency consultant's opinion, and may give it greater weight than other nontreating physician's opinions if it is supported by the evidence.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015).  Further, an ALJ may rely on a state agency consultant's opinion that predates other medical evidence in the record, if the ALJ takes into account any evidence that the consultant did not consider.  *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009).

The ALJ applied proper legal standards in weighing the medical opinion evidence.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Rogers*, 486 F.3d at 241.  Here, the ALJ complied with the regulations when she explained that: (1) she gave Dr. Fischer's opinion "partial weight" because his own treatment records showed mostly normal findings with mild and moderate abnormalities, and did not support the marked or extreme limitations in his opinion; and (2) she gave Dr. Malloy's and Dr. Haskins' opinions "great weight" because they were consistent with the other evidence in the record.  *Gayheart*, 710 F.3d at 376-77; 20 C.F.R. §§ 404.1527(c), 20 C.F.R. § 416.927(c); (Tr. 21-22).  Further, the ALJ did not fail to discuss any evidence in the record, but thoroughly analyzed Dr. Fischer's treatment notes and Schender's other mental health records so that is sufficiently clear for this court to understand the weight given the medical opinions and the ALJ's reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Cole*, 661 F.3d at 938; (Tr. 17-22).  Even if the court assumes error in the ALJ's failure bifurcate her analysis of whether Dr. Fischer's opinion was due controlling-weight and what weight she actually gave Dr. Fischer's opinion, that error is harmless because the ALJ's explanation for giving Dr. Fischer's opinion "partial weight" implicitly explains why she did not give Dr. Fischer's opinion controlling weight.  *See Allums v. Colvin*, No. 1:14-cv-2429, 2015 U.S. Dist. LEXIS 169408, at *57 (N.D. Ohio, Nov. 25, 2015) ("[W]hile the ALJ did not technically comply with the treating physician rule by separating his controlling weight analysis, . . . the ALJ's analysis implied that he was not attributing controlling weight to [the treating physician's] opinions and the ALJ provided sufficient reasons for not attributing such weight to those opinions."); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (stating that harmless error could be found when "the Commissioner has met the goal of . . . the procedural safeguard").  Finally, because the ALJ considered all the evidence in the record and determined that the state agency

consultants' opinions were consistent with that evidence, the ALJ was permitted to give their

opinions "great weight."  *Reeves*, 618 F. App'x at 274; *McGrew*, 343 F. App'x at 32; (Tr. 17-21).

Substantial evidence supported the ALJ's decision to give "partial weight" to

Dr. Fischer's opinion and "great weight" to Dr. Malloy's and Dr. Haskins' opinions.  42 U.S.C.

§§ 405(g); 1383(c)(3); *Rogers*, 486 F.3d at 241.  Here, a review of the record shows that the

marked and extreme limitations in Dr. Fischer's opinions were inconsistent with his own

treatment notes, including: (1) notes frequently giving Schender a GAF score between 52 and 65;

(2) notes rating Schender's anxiety and depression as "mild" or "moderate;" (3) objective

examination findings that Schender was alert and oriented and had average intelligence, normal

thought processes/content, fair short-term memory, good long-term memory, appropriate affect,

and fair judgment/insight; and (4) notes indicating that Schender could control his symptoms

with a healthy diet, exercise, medication, and therapy.  (Tr. 457-500, 526-81, 585-654, 658-85,

689-716, 721-74, 799-827).  Further, Dr. Malloy's and Haskin's opinions were consistent with

the same evidence from Dr. Fischer's treatment notes, as well as notes from Schender's other

providers indicating that he had a good long-term memory, improved his depression symptoms,

and denied anxiety, fatigue, and mood issues.  (Tr. 315, 318, 321, 324, 327, 457-500, 503-05,

515, 517, 519, 521, 526-81, 585-654, 658-85, 689-716, 721-74, 799-827).  Thus, even if

evidence could support a different result, the ALJ's weight decision fell within the

Commissioner's "zone of choice" because it was reasonably drawn from the record.  *Mullen*, 800

F.3d at 545; *Rogers*, 486 F.3d at 241.

### C.    Residual Functional Capacity

Schender argues that substantial evidence did not support the ALJ's RFC finding – that

Schender could "carry out tasks that were relatively static and changes can be explained" and

perform "short cycle tasks in a setting without fact pace demands[,] . . . timed tasks[,] or rate quotas." ECF Doc. 11 at 15.  Schender asserts that the ALJ erroneously based his finding on GAF scores in Dr. Fischer's treatment notes because: (1) GAF scores were not available in Dr. Fischer's later treatment notes; and (2) GAF scores have no direct correlation to the severity requirements in the Social Security Act and regulations. ECF Doc. 11 at 15-16.  Further, Schender contends that the ALJ failed to adequately consider notes from Dr. Fischer, indicating that he was unable to cope with stress, leave his home, and be in public. ECF Doc. 11 at 17.  Schender argues that the ALJ's RFC assessment indicates that the ALJ improperly cherry-picked evidence to support her own medical judgment. ECF Doc. 11 at 17-18.

The Commissioner responds that the ALJ adequately considered all the evidence in the record in assessing Schender's RFC and reached a conclusion supported by substantial evidence. ECF Doc. 13 at 4-8.  The Commissioner argues that the ALJ did not ignore or cherry-pick any of the evidence in the record, but adequately considered the record as a whole and was not required to discuss every piece of data in his decision explanation. ECF Doc. 13 at 5-8.  Further, the Commissioner asserts that the ALJ did not rely only on Schender's GAF scores, but properly considered them in evaluating all the record evidence. ECF Doc. 13 at 7-8.

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is an assessment of a claimant's ability to do work despite his impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical

history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.  Such evidence may also include a claimant's GAF scores.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("[A] GAF score may be of considerable help to the ALJ in formulating the RFC.").

The ALJ applied proper legal standards and reached a decision supported by substantial evidence in evaluating Schender's RFC.  Here, the ALJ complied with regulations by explicitly considering all of Schender's impairments – severe or otherwise – in light of the objective medical evidence, medical opinions, and Schender's own testimony regarding his symptoms.  20 C.F.R. §§ 404.1520(e), 404.1529(a), 416.920(e), 416.929(a); SSR 96-8p, 1996 SSR LEXIS 5; (Tr. 15-22).  The ALJ did not cherry-pick the evidence or improperly consider Schender's GAF scores, but based her decision on an exhaustive review of the record – including objective examination notes, treatment records, medical opinions GAF scores, and Schender's own testimony.  *Howard*, 276 F.3d at 241; 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-8p, 1996 SSR LEXIS 5 (Tr. 15-22).  Further, substantial evidence supported the ALJ's finding that Schender could perform work if limited to static work with changes explained and short-cycle tasks without fast pace demands, timed tasks, or rate quotas, including: (1) Dr. Fischer's notes indicating that Schender was alert and oriented and had had average intelligence, normal thought processes/content, fair short-term memory, good long-term memory, appropriate affect, and fair judgment/insight; (2) notes indicating that Schender quickly improved after his single episode of suicidal decompensation; (3) Dr. Fischer's notes that Schender could control his symptoms with a healthy diet, exercise, medication, and therapy; (4) other treatment providers' notes indicating that Schender had a good long-term memory, improved his depression symptoms, and denied

anxiety, fatigue, and mood issues; (5) Schender's own testimony that his medications helped

somewhat; and (6) Dr. Malloy's and Dr. Haskins' opinions, indicating that Schender had no

more than mild or moderate mental limitations.  (Tr. 48-49, 131-36, 144-50, 315, 318, 321, 324,

327, 346-48, 353-57, 362-69, 374, 404-05, 457-500, 503-05, 515, 517, 519, 521, 526-81, 585-

654, 658-85, 689-716, 721-74, 799-827).  Thus, the ALJ's RFC determination was reasonably

drawn from the record, and the ALJ built an accurate and logical bridge between the evidence

and the result.  *Rogers*, 486 F.3d at 241; *Muller*, 800 F.2d at 545; *Fleischer*, 774 F. Supp. 2d at

877.

## VI.   Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by

substantial evidence, I recommend that the Commissioner's final decision denying Schender's

application for disability insurance benefits be AFFIRMED.

Dated: December 13, 2019

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  *See
United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140
(1985), reh'g denied, 474 U.S. 1111 (1986).